UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SYNDI TRACTON, on behalf of herself, all others similarly situated, and the general public, | Case No.: 16-cv-2772-BTM-KSC |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO STRIKE [ECF NO. 14] AND MOTION TO DISMISS [ECF NO. 15]** |
| v. | |
| VIVA LABS, INC., | |
| Defendant. | |

Before the Court are Defendant Viva Labs, Inc.'s Motion to Strike Allegations in the Complaint (ECF No. 14) and Motion to Dismiss the Complaint (ECF No. 15.) For the reasons discussed below, the motion to strike and motion to dismiss are denied.

## I. BACKGROUND

Plaintiff Syndi Tracton ("Plaintiff") brings a putative consumer class action against Defendant for marketing its Organic Extra Virgin Coconut Oil as "both inherently healthy and a healthy alternative to butter, despite that the Coconut Oil's total fat and saturated fat content make it unhealthy, and a less healthy alternative." (ECF No. 1, ¶ 58 ("Compl.").) Plaintiff claims that Defendant

deceptively markets its coconut oil through representations it makes on its product labels, website, and Amazon.com ("Amazon").  (Compl. ¶¶ 61, 73, 82.)

In January 2015, Plaintiff purchased a 54-fluid ounce coconut oil from Amazon for approximately $25.  (Compl. ¶ 114.)  In deciding whether to purchase Defendant's coconut oil, Plaintiff specifically relied on the following claims on the product's label and Amazon's product page:

1. "Every coconut that goes into Viva Labs organic Extra Virgin Coconut Oil is handpicked and cold-pressed at its peak to ensure maximum nutritional value, making it a healthy addition to your daily life through dietary supplementation . . . ."

2. "To learn more about coconut oil, its uses and many health benefits, visit: www.VivaLabs.com"

3. "MCTs for energy and weight management"

4. "Free of . . . trans fats"

5. "take 1–4 tablespoons per day for best results"

6. "Can be added to your favorite foods to boost nutrition"

7. "For Cooking: Excellent for cooking . . . . Can be used as a dairy-free alternative to butter in baking."

8. "Medium-chain triglycerides (MCTs) for weight management and increased energy"

9. "Our trop-grade coconuts are selectively chosen and hand-picked at their peak freshness and fragrance by skilled local farmers native to this sacred region.  These succulent coconuts are then cold-pressed at low temperatures using our proprietary extraction method, preserving powerful nutrients and health-promoting antioxidants."

10. "Within only a few hours upon harvesting, our organic coconuts are gently cold-pressed through a proprietary extraction process, retaining antioxidants [and] essential nutrients . . . ."

16-cv-2772-BTM-KSC

11.     Virgin coconut oil has a longer shelf-life than traditional oils due to naturally-occurring MCTs which help preserve nutrients [and] antioxidants . . . ."

(Compl. ¶¶ 115–116.)

Based on these representations, taken individually and within the context of the label and Amazon webpage as a whole, "[P]laintiff believed the Coconut Oil was healthy, healthier than butter and other oils, would only make positive contributions to health, and would not increase her risk of serious disease." (Compl. ¶ 117.)  Plaintiff is a lay consumer who was looking to purchase a product that had the qualities described on the coconut oil's label.  (Compl. ¶¶ 118, 120.)  Plaintiff instead purchased a product that "is almost entirely composed of saturated fat" and "higher in saturated fat, lower in monounsaturated fat, and lower in polyunsaturated fat" than other alternatives. (Compl. ¶¶ 53, 57.)  Plaintiff alleges that these representations "had the capacity, tendency, and likelihood to confuse or confound plaintiff and other consumers acting reasonably . . . because, as described in detail herein, the Coconut Oil is not healthy, but instead negatively impacts health as its consumption increases the risk of [coronary heart disease], stroke, and other morbidity."  (Compl. ¶ 119.) Plaintiff claims that she "paid more for the Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling."  (Compl. ¶ 122.)

Plaintiff pleads five causes of action on behalf of the putative class: (1) violations of the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*; (2) violation of the False Advertising Law ("FAL"), California Business and Professions Code §§ 17500, *et seq.*; (3) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; (4) breach of express warranty, California Commercial Code § 2313(1); and (5) breach of implied warranty of merchantability, California

Commercial Code § 2314.  (Compl. ¶¶ 141–184.)

## II. DISCUSSION

### A. MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In deciding a motion to dismiss, a court may consider the facts alleged in the complaint, exhibits attached to the complaint, and documents whose authenticity is not questioned and upon which the plaintiff's complaint necessarily relies on, even if not physically attached to the complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks omitted).  Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

Under Federal Rule of Civil Procedure 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b).  A plaintiff alleging fraud "must state the time, place, and specific content of

the false representations as well as the identities of the parties to the misrepresentations." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

### 1. Standing to Pursue Claims Based on Defendant's Website

To adequately plead a claim under the UCL or FAL, a plaintiff must have suffered injury in fact . . . as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17204, 17535. A plaintiff proceeding on a claim of misrepresentation as the basis of her UCL claim must therefore make a showing of actual reliance on the alleged deceptive or misleading statement. *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310, 326–27 (2011). Similarly, under the CLRA a plaintiff must also demonstrate actual reliance to assert standing. *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 973 (2009).

Defendant moves to dismiss any claims that are based on its website's statements, arguing that Plaintiff lacks standing because she fails to allege that she relied upon any website representations. Plaintiff appears to make two arguments in response. First, Plaintiff argues that despite not alleging reliance, she can nevertheless pursue these claims because Defendant directs consumers to its website on the product label and encourages them to learn about the "many health benefits" of its coconut oil by visiting its website. However, because the Complaint does not allege that she relied on misrepresentations made on Defendant's website, Plaintiff does not have standing to proceed on these claims. *See Kwikset Corp.*, 51 Cal.4th at 326–27. Second, Plaintiff argues that she is not stating a claim for relief as to the falsity of representations on Defendant's website, but instead referencing the website because it is highly relevant to various issues in the case. Given the early stage of this action, the Court concludes that Plaintiff's references to the website may be relevant.

//

Because Plaintiff's claims are also based on statements other than those on Defendant's website, the Court denies Defendant's motion to dismiss.

### 2. Standing to Pursue Injunctive Relief

Defendant challenges Plaintiff's Article III standing to pursue injunctive relief because Plaintiff does not allege that she would purchase the coconut oil for cooking or consumption again.

To establish that she has standing, a plaintiff must show that (1) she suffered an injury in fact; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). To establish standing for prospective injunctive relief, a plaintiff must demonstrate that "[s]he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). A plaintiff must establish a "real and immediate threat of repeated injury." *Bates*, 511 F.3d at 985. Although past wrongs are evidence relevant to whether there is a real and immediate threat of repeated injury, past wrongs do not in and of themselves amount to a real and immediate threat of injury sufficient to make out a case or controversy. *Id.* "In a class action, standing is satisfied if at least one of named plaintiff[s] meets the requirements," and it is plaintiff's burden to demonstrate that the Article III standing requirements are met. *Bates*, 511 F.3d at 985 (quoting *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)).

Defendant argues that the wrong alleged is the misrepresentation concerning the healthfulness of the coconut oil as food and because Plaintiff has not alleged that she would purchase the coconut oil again for consumption purposes, she has failed to show a sufficient likelihood that she will again be harmed in a similar way. In the alternative, Defendant also argues that it is

implausible for Plaintiff to allege that she risks being harmed again by the alleged misrepresentations because she is now aware of them. Plaintiff contends that she has met her burden by alleging that:

> [i]f she could be assured that any health and wellness labeling on the Coconut Oil was lawful and not misleading, she would consider purchasing the product in the future, including for uses other than direct consumption, if she could be assured that its price matched its true value in a fair and honest marketplace. Thus, were [Defendant] to remove the false and misleading claims, plaintiff may desire to purchase the Coconut Oil in the future for cosmetic purposes other than direct consumption if the subsequent marketplace pricing was based on fair and honest labeling.

(Compl. ¶ 129.)

While Defendant does take Plaintiff's statements out of context to argue that she is *only* willing to purchase the coconut oil for cosmetic purposes, the Court recognizes that the Complaint is subject to some ambiguity. While on the one hand, Plaintiff's use of the word "including" indicates that she does not intend to limit her use of the coconut oil to only cosmetic purposes, the allegations do appear to focus on that particular future use. Additionally, Plaintiff does not appear to dispute Defendant's claim that she will not purchase the coconut oil again for consumption purposes. Nevertheless, in considering this jurisdictional challenge, the Court must take all of Plaintiff's allegations as true and construe them in the light most favorable to Plaintiff. *See Parks Sch. Of Bus., Inc.*, 51 F.3d at 1484. Thus, the Court finds that the Complaint sufficiently alleges that she is willing to purchase Defendant's coconut oil for general use.

As this Court recognized in *Mason v. Nature's Innovation, Inc.*, 12cv3019-BTM, 2013 WL 1969957, at * 2 (S.D. Cal. May 13, 2013), district courts in this Circuit are split over the issue of "whether a plaintiff, who is seeking to enjoin a seller of manufacturer from making false or misleading misrepresentations about an item the plaintiff previously purchased, must be able to establish that he would likely purchase the item again to establish standing." Some district courts have

concluded that a plaintiff cannot assert Article III standing because by being aware of the deceptive nature of an advertisement, a plaintiff is not likely to be harmed again in the same way. *See, e.g.*, *Hunter v. Nature's Way Prods., LLC*, 16cv532-WQH, 2016 WL 4262188, at *13 (S.D. Cal. Aug. 12, 2016) ("These allegations support an inference that now that Plaintiffs are aware of the alleged misrepresentations on the coconut oil labels, Plaintiffs will not purchase the products in the future."); *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 960 (N.D. Cal. 2015); *Anderson v. The Hain Celestial Group, Inc.*, 87 F. Supp. 3d 1226, 1235 (N.D. Cal. 2015). Other district courts have found that a plaintiff can have standing to pursue injunctive relief despite being aware of the false advertisements. *See, e.g.*, *Henderson v. Gruma Corp.*, No. 10-04173-AHM, 2011 WL 1362188, at *7 (C.D. Cal. April 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and would never have Article III standing."); *Koehler v. Litehouse, Inc.*, No. 12-04055-SI, 2012 WL 6217365, at *6 (N.D. Cal. Dec. 13, 2012); *Boswell v. Costco Wholesale Corp.*, No. 16-0278-DOC, 2016 WL 3360701, at *11 (C.D. Cal. June 6, 2016). However, many of those courts require that plaintiffs allege an intent to purchase a defendant's product in the future. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Rahman v. Mott's LLP*, No. 13-3482-SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014). Indeed, in *Mason*, this Court recognized that there were circumstances in which a plaintiff could adequately allege standing, stating:

> it is an exaggeration to claim that injunctive relief would never be available in false advertising cases. There are cases where a consumer would still be interested in purchasing the product if it were labeled properly—for example, if a food item accurately stated its ingredients. . . In these types of

cases that do not involve claims that a product does not work or perform as advertised, injunctive relief may still be available.

The Court finds that this case presents the appropriate circumstances. Taking the allegations in the light most favorable to Plaintiff, she has alleged that she would purchase the coconut oil again in the future. Plaintiff has, therefore, sufficiently pled a real and immediate threat of continued harm. Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's request for injunctive relief.

### 3. Misrepresentation-Based Claims

Plaintiff asserts misrepresentation claims under California's UCL, FAL and CLRA. California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The false advertising law prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. California's CLRA prohibits "unfair methods or competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

### i. Reasonable Consumer Test

Defendant argues that Plaintiff's UCL, FAL, and CLRA claims should be dismissed because she fails to plausibly allege that a reasonable consumer is likely to be deceived by the alleged false advertising.

Under the UCL, FAL, and CLRA, deceptive labeling claims are evaluated by the "reasonable consumer" test—whether a reasonable consumer would "likely be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506–07 (2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. 4th at 508. Instead,

the test requires that "the ad is such that it is probable that a significant portion of the general consuming public or targeted consumers, acting reasonable in the circumstances, could be misled." *Id.* Both California and federal courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision at the pleading stage. *Williams*, 552 F.3d at 938. Only in "rare situation[s]" is granting a motion to dismiss a UCL claim appropriate. *Id.* at 939.

After reviewing the Complaint, the Court finds that this case is not one of those "rare situation[s]." First, Defendant argues that because the "label expressly informs consumers that coconut oil is 100% fat, and that 13 grams of each 14-gram serving are saturated fat," Plaintiff cannot claim that a reasonable consumer is "unlikely to realize that the product he or she is buying is 100% fat and mostly saturated fat." (Def.'s Mot. to Dismiss ("Def.'s MTD"), ECF No. 15, 8.) However, in light of all of the statements that Plaintiff relied upon, the Court cannot conclude as a matter of law that no reasonable consumer would interpret Defendant's statements to mean that its coconut oil is healthy and a healthier alternative than butter. While the ingredient list does explicitly disclose the coconut oil's saturated fat content, the label also represents that it is "[f]ree of . . . trans fats," has "MCTs for energy and weight management," and is a "healthy addition to your daily life through dietary supplementation," among other statements that Plaintiff relied upon. Indeed, the Ninth Circuit in *Williams v. Gerber Products Company* rejected the idea that "manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Williams*, 552 F.2d at 939.

Defendant attempts to distinguish this case from *Williams* because here, Plaintiff takes no issue with the front of the label and the alleged misrepresentations instead appear on the side panel, adjacent to the ingredient list. However, the Court does not interpret *Williams* so narrowly as to only apply

16-cv-2772-BTM-KSC

to cases in which the front of the label is at issue with the ingredient list found on the side of the box. *See Williams*, 552 F.3d at 939. Here, notwithstanding the ingredient panel, the statements on the label coupled with the Amazon product page, at the very least, create an issue of fact as to whether a reasonable consumer would likely be deceived by such statements. *See Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1096 (N.D. Cal. 2013); *see also Hunter*, 2016 WL 4262188, at *7; *Boswell*, 2016 WL 3360701, at *7.

Second, Defendant argues that because Plaintiff alleges that it is "well established that diets generally high in saturated fatty acids increase the risk of CHD," her claims that the label is false or misleading should be dismissed. (Compl. ¶ 33.) However, as Plaintiff notes, she does not dispute that saturated fats may be harmful, but instead that Defendant's "labeling claims [are] intended to convince consumers that the product is healthy, and to conceal or distract from the fact the Coconut Oil is almost entirely saturated fat." (Compl. ¶ 61.) Plaintiff alleges that these claims, "taken individually and in context of the label as a whole, are false and misleading because the Coconut Oil is not 'healthy,' nor does it positively 'boost nutrition' given its saturated fat, which adversely affects cholesterol levels and increases risk of CHD, stroke, and other morbidity." (Compl. ¶ 66.) Viewing the facts and representations in the light most favorable to Plaintiff, the Court cannot hold at this juncture that it would be impossible for Plaintiff to prove that a reasonable consumer would be deceived by Defendant's representations.

Accordingly, the Court declines to dismiss Plaintiff's UCL, FAL, and CLRA claims based on the reasonable consumer test.

### ii. Reliance and Causation Prongs

Defendant also moves to dismiss Plaintiff's misrepresentation claims on the ground that she has failed to sufficiently plead reliance.

16-cv-2772-BTM-KSC

As discussed above, to having standing under the UCL, FAL, and CLRA, a plaintiff must plead actual reliance. *Kwikset Corp.*, 51 Cal.4th at 326–27. A plaintiff must, therefore, demonstrate that "the defendant's misrepresentation or nondisclosure was an 'immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). It is enough for a plaintiff to plead that she would not have purchased the product absent the misleading advertising. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("In a false advertising case, plaintiffs meet this requirement if they show that, by relying on a misrepresentation on a product label, 'they paid more for a product than they otherwise would have paid, or bought it when they would otherwise not have done so.'" (quoting *Hinojos*, 718 F.3d at 1104, n.3, 1108)).

Defendant largely renews its arguments that Plaintiff's reliance on the misrepresentations is unreasonable. As already held, this is not a "rare situation" that would allow the Court to dismiss the Plaintiff's claims at this juncture. A review of Plaintiff's allegations reveals that she has adequately pled reliance. She claims that when deciding whether to purchase Defendant's coconut oil, she read and relied on the representations made on the product's label, as well as on the Amazon product page. Plaintiff further alleges that she "would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling." (Compl. ¶ 122.) As such, Defendant's motion to dismiss is denied on this ground.

### 4. Violations of the FDA and Sherman Laws

Defendant argues that Plaintiff's allegations concerning FDA labeling violations cannot support her misrepresentation claims. However, Plaintiff relies on these alleged FDA violations to support her claim under the UCL's unlawful prong—a separate theory from her misrepresentation claims. The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof.

Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). "By proscribing 'any unlawful' business practice, 'section 17200 borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Here, Plaintiff alleges that Defendant acted unlawfully under the UCL by violating several laws including the California Sherman Food, Drug, and Cosmetic Law ("Sherman Laws"), Cal. Health & Safety Code §§ 110100 *et seq.* California's Sherman Laws expressly adopts federal food supplement labeling requirements as their own. Cal. Health & Safety Code § 110100. Thus, Plaintiff can properly rely on violations of the FDA and Sherman Laws in bringing her claim under the unlawful prong of the UCL. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116–17 (S.D. Cal. 2011); *Hunter*, 2016 WL 4262188, at *8. Nevertheless, Defendant challenges Plaintiff's use of FDA regulations as the basis for her UCL claim.

First, Defendant argues that "technical" violations of the FDA are not actionable under the UCL because misbranded food under these regulations are not automatically misleading. Under both the federal and California labeling regulations, a food product is deemed misbranded when its label contains any statement that is "false or misleading in any particular." Cal. Health & Safety Code § 110660. While true that a misbranded label does not necessarily result in a misleading label, as already discussed above, Plaintiff has alleged sufficient facts to at least create an issue of fact that a reasonable consumer is likely to be deceived by Defendant's representations of the coconut oil. At this juncture, Plaintiff has thus adequately pled a violation of Cal. Health & Safety Code § 110660. Additionally, a food is deemed misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth

16-cv-2772-BTM-KSC

under federal law. § 110670. Plaintiff specifically alleges that the coconut oil is misbranded because "its label bears nutrient content claims even though it does not meet the requirements to make such claims." (Compl. ¶¶ 91–98.) Under the FDA regulations, nutrient content claims that expressly or implicitly characterize the level of a nutrient of the type required to be in nutrition labeling must be made in accordance with federal regulations. 21 U.S.C. § 343(r)(1)(A). Under 21 C.F.R. § 101.13(h), a food or supplement that bears an express or implied nutrient content claim and contains more than 13.0 g of fat or 4.0 g of saturated fat per serving must also bear a statement disclosing that the nutrient exceeding the specified level is present in the food. Plaintiff alleges that despite the fact that the coconut oil contains 14 grams of total fat and 13 grams of saturated fat per serving, "its label fails to bear the mandatory disclosure statements, which provide consumers with material nutrition information." (Compl. ¶ 97.) Similarly, Plaintiff claims that the label is misbranded because it does not meet the requirements to make "use of the implied nutrient content claim, 'healthy.'" (Compl. ¶¶ 99–113.) Section 101.65(d) of 21 C.F.R covers labeling claims that are implied nutrient content claims where they: "(i) [s]uggest that a food because of its nutrient content may help consumers maintain healthy dietary practices; and (ii) [a]re made in connection with an explicit or implicit claim or statement about a nutrient." In order to use the term "healthy" or related terms as an implied nutrient content claim, a food must be "[l]ow fat as defined in § 101.62(b)(2)," and contain "[a]t least 10 percent of the RDI or the DRV per RA of one or more vitamin A, vitamin C, calcium, iron, protein or fiber." 21 C.F.R. § 101.65(d)(2)(i)(F). Because the coconut oil does not meet these regulatory requirements, Plaintiff alleges that it cannot bear the term "healthy" and is misbranded. (Compl. ¶¶ 105–113.) Thus, Plaintiff has pled sufficient facts to allege that the coconut oil is misbranded under these three separate FDA regulations.

16-cv-2772-BTM-KSC

Second, Defendant argues that Plaintiff has not alleged any injury from the alleged violations of the FDA regulations. A review of Plaintiff's allegations reveals that when deciding whether to purchase Defendant's coconut oil, she relied on the representations that are the basis of the FDA violations. She specifically alleges that she relied on claims such as "making it a healthy addition to your daily life through dietary supplementation," "[f]ree of . . . trans fats," and contains "MCTs for energy and weigh management." (Compl. ¶¶ 115–116.) She further claims that absent these representations, she "would have only been willing to pay less, or unwilling to purchase it at all." (Compl. ¶ 122.) Plaintiff has, therefore, alleged sufficient facts to support that she relied on these representations.[1]

Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's UCL unlawful claim.

### 5. UCL Claim

Defendant contends that Plaintiff has failed to state a claim based on all three independent prongs of the UCL. As already discussed above, Plaintiff has alleged sufficient facts to state a claim under both the fraudulent and unlawful prongs of the UCL. As to the unfair prong, Defendant argues that Plaintiff has failed to allege why the conduct is unfair or how it is immoral.

_____

[1] In her Opposition, Plaintiff argues that "[w]hile she adequately pled reliance on the misbranded claims, plaintiff need not even have alleged reliance under the UCL." (Pl.'s Opposition to Def.'s MTD ("Pl.'s Opp'n"), ECF No. 19, 16, n. 7.) While Plaintiff did nevertheless adequately plead reliance, the Court takes this opportunity to clarify the law. Plaintiff is correct in that not all claims under the UCL's unlawful prong require a plaintiff to satisfy Federal Rule of Civil Procedure 9(b) and in turn, plead actual reliance. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). However, when, as in this case, a plaintiff claims that that the behavior underlying the alleged FDA violations and the Sherman Laws is misrepresentation or deception, the claim sounds in fraud and is subject to Rule 9(b)'s heightened standard. *See Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013); *see also Jones v. Nutiva*, 16-cv-00711-HSG, 2016 WL 5210935, at *8 (N.D. Cal. Sept. 22, 2016) ("when, as in this case, a plaintiff basis its 'unlawful business practices claims on a defendant's alleged violations of underlying laws by way of allegedly fraudulent or deceptive labeling and advertising practices,' the entire complaint 'sounds in fraud and must meet Rule 9(b)'s heightened pleading standard.'" (internal citations omitted)). Here, Plaintiff alleges that Defendant violated the FDA regulations, at least in part, because the label is false and misleading. Thus, Plaintiff is required to plead actual reliance even under its "misbranded theory." *See Wilson*, 961 F. Supp. 2d at 1144–45.

16-cv-2772-BTM-KSC

Under the unfair prong of the UCL, a plaintiff must allege sufficient facts to demonstrate that Defendant's "unfair" business practice: (1) offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (2) is tied to a legislatively declared policy. *See Lozano v. Att&T Wireless Servs.*, 504 F.3d 718, 736 (9th Cir. 2007); *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999) (internal quotations omitted). Though California law remains unsettled as to what standard should be applied to consumer claims under the unfair prong, the Ninth Circuit directs courts to use either a traditional balancing test or a tethering test. *See Lozano*, 504 F.3d at 735–36. Under the balancing test, a defendant's practices are considered unfair if the utility of its conduct is outweighed by the gravity of the harm that a plaintiff allegedly suffers. *S. Bay Chevrolet*, 72 Cal. App. 4th at 886.

Here, Plaintiff alleged that Defendant's sale of the coconut oil "was unfair because [Defendant's] conduct was immoral, unethical, unscrupoulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims." (Compl. ¶ 149.) She further claims that "[t]her harm to consumers caused by increased consumption of the Coconut Oil due to the deceptive claims is not outweighed by the benefit of increased profits gained from the deceptive claims." (Compl. ¶ 150.) The Court finds that these allegations are enough to survive a motion to dismiss. Therefore, Defendant's motion is denied as to Plaintiff's unlawful claim under the UCL.

### 6. Breach of Express Warranty

Defendant moves to dismiss Plaintiff's breach of express warranty claim arguing that the claim is based on "highly subjective claims" that are not actionable. (Def.'s MTD 17.)

California Commercial Code Section 2313(1) provides that an express warranty is created by: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain [that] creates an express warranty that the goods shall conform to the affirmation or promise;" and "(b) Any description of the goods which is made part of the basis of the bargain [that] creates an express warranty that the whole of the goods shall conform to the sample or model." To state a claim for breach of express warranty under this statute, a plaintiff must allege: (1) "the exact terms of the warranty;" (2) "plaintiff's reasonable reliance thereon;" and (3) "a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). An actionable express warranty must be "specific and unequivocal." *Chambliss v. GMC*, 108 F.3d 1176, 1181 (9th Cir. 1997). "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (9th Cir. 1985).

Here, Plaintiff alleges that "[t]hroughout the Coconut Oil label, [Defendant] made affirmations of fact or promises, or descriptions of goods, that . . . the product is 'a healthy addition to your daily life through dietary supplementation, [and cooking], 'will boost nutrition' and provides 'many health benefits.'" (Compl. ¶ 173.) Drawing all inferences in the light most favorable to Plaintiff, the Court must find that Plaintiff has adequately alleged her breach of express warranty claim. *See Jones*, 2016 WL 5210935, at *9; *Boswell*, 2016 WL 3360701, at *10; *In re Ferrero Litig.*, 794 F. Supp. 2d at 1118. Defendant's motion to dismiss this claim is, therefore, denied.

//
//
//

### 7. Breach of Implied Warranty of Merchantability

Defendant also moves to dismiss Plaintiff's breach of implied warranty claim, arguing that Plaintiff fails to allege that the coconut oil is not fit for ordinary use.  Additionally, Defendant claims that the coconut oil's label did not fail to conform to any affirmations on its label because the ingredient list expressly disclosed its saturated fat content.  Plaintiff argues that rather than relying on a theory that the product is not fit for ordinary purposes, its claim is based on the product's failure to "conform to promises and affirmations made on the container or label of the goods."  (Compl. ¶ 182.)

Under California's Commercial Code Section 2314, "a warranty that the goods shall be merchantable is implied in a contract for their sale."  The California Supreme Court has defined "merchantability" as a product that conforms to the promises or affirmations of fact made on the container or label or as a product that fits the ordinary purpose for which such good is used.  *Hauter v. Zogarts*, 14 Cal.3d 104, 117–18 (1975).  Applying the first definition to this case, the Court finds that Plaintiff has sufficiently pled a breach of implied warranty.  Though Plaintiff does not allege that the coconut oil is not fit for ordinary use, she does allege that Defendant has failed to conform to the promises or affirmations made on its label.  Moreover, as already discussed above, Plaintiff has at least sufficiently alleged that a reasonable person would be deceived by the representations made on the label.  Therefore, it is not enough at this juncture that the ingredient list expressly discloses the product's saturated fat content.  Thus, Plaintiff's claim survives.

### 7. Injury

Lastly, Defendant argues that Plaintiff's UCL, FAL, and CLRA claims should be dismissed because she has failed to allege any damages model by which the Court could measure her restitutionary relief.

//

16-cv-2772-BTM-KSC

Defendant has not cited to any cases that impose this standard at the pleading stage. The Court finds this issue to be premature. *See Comcast Corp. v. Behrend*, __ U.S.__, 133 S.Ct. 1426, 1433 (2013) (requiring plaintiffs to establish "that damages are capable of measurement on a classwide basis" at the class certification stage). Plaintiff has alleged that she "lost money as a result of [Defendant's] deceptive claims and practices in that she not receive what she paid for when purchasing the Coconut Oil." (Compl. ¶ 127.) Defendant's motion to dismiss Plaintiff's misrepresentation claims is, therefore, denied.

## B. MOTION TO STRIKE

Defendant moves to strike Plaintiff's allegations concerning Defendant's website, as well as Plaintiff's proposed class allegations. In response, Plaintiff argues that the website statements are relevant to class certification issues and that challenges to her class allegations are premature at this stage of the proceedings.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous manner." Fed. R. Civ. P. 12(f). The Ninth Circuit defines "immaterial matter" as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1524 (9th Cir. 1993). "The function of a motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc*, 984 F.2d, at 1527) (internal quotations omitted).

However, motions to strike are viewed with disfavor by the courts, and often require a showing of prejudice by the moving party in order to be granted. *See Mag Instrument, Inc. v. JS Products, Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D.

16-cv-2772-BTM-KSC

Cal. 2008).  *See also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2013).  Ultimately, the decision to grant a motion to strike is within the court's sound discretion.  *Mag Instrument*, 595 F. Supp. 2d at 1102.

As already discussed above, though Plaintiff's allegations concerning Defendant's website cannot support her misrepresentation claims, it is unclear at this juncture whether they can be considered "immaterial."  *See Hunter*, 2016 WL 4262188, at *15 ("With regard to Defendant's motion to strike allegations regarding statements on Defendants' website . . . the Court concludes that issues regarding whether these allegations are material to the litigation will be better solved at the class certification stage of the proceedings.").  As to Defendant's motion to strike Plaintiff's class allegations, the Court similarly concludes that these issues are best resolved at the class certification stage.  While it is true that a defendant can preemptively petition the court to deny class certification under Rule 23, here, Defendant moves to strike the class allegations pursuant to Rule 12.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 20096).  Defendant "has not answered in this case, discovery has not yet commenced, and no motion for class certification has been filed."  *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 616 (N.D. Cal. 2007).

Thus, Defendant's motion to strike allegations of the Complaint is denied.

//
//
//
//
//
//
//
//

16-cv-2772-BTM-KSC

# IV. CONCLUSION

For the reasons discussed above, Defendant's motions to dismiss (ECF No. 15) and strike allegations in the Complaint (ECF No. 14) are **DENIED.**

**IT IS SO ORDERED.**

Dated: September 18, 2017

_____

Barry Ted Moskowitz, Chief Judge
United States District Court

16-cv-2772-BTM-KSC